Opinion Issued on October 29, 2009















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00724-CR






HERSCHELL DEAN SHINETTE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 405th Judicial District

Galveston County, Texas

Trial Court Cause No. 07CR1045









MEMORANDUM OPINION

 Appellant, Herschell Dean Shinette, appeals from a judgment sentencing him
to life in prison for the murder of Antonio Castillo Flores. See Tex. Penal Code
Ann. § 19.02(b)(1)-(b)(2) (Vernon 2003). Appellant pleaded not guilty to the jury. 
The jury found appellant guilty and determined his sentence. In two issues, appellant
contends the evidence is legally and factually insufficient to support his conviction. 
We conclude the evidence is legally and factually sufficient to sustain appellant's
conviction for murder as the principal actor. We affirm.

Background

 On March 27, 2007, appellant and co-defendant Donnie Robinson discussed
plans to rob the Big Easy Game Room in La Marque, Texas. Robinson created the
plan on the assumption that workers at the Game Room would be easy to rob because
they carried around large sums of money. 

 Later that evening, at approximately 12:45 a.m., appellant and David Mason
borrowed Meshia Johnson's gold Pontiac Grand Am. Johnson stated appellant
borrowed the Grand Am with the intent to "hit a lick," which she said meant the act
of committing robbery.

 Johnson's ex-boyfriend, Dominque Jack, noticed the Grand Am when it drove
by the parking lot of a La Marque night club where Jack was. Jack saw appellant
driving the Grand Am with passengers Mason and Robinson.

 At approximately 1:00 A.M., appellant tried to enter the Big Easy Game Room.
Employee Julie Rojas noticed appellant looked younger than 21, so she asked for his
membership card and denied him entry when he failed to produce one. Appellant left. 

 At the same time appellant tried to enter the Game Room, two patrons, Ronnie
Mims and his fiancé, were inside the Game Room. After the incident with appellant
at the front door, Mims and his fiancé decided to leave to avoid any potential trouble.
Because they had won money, Flores, the complainant, offered to escort the couple
to their car. After escorting the couple, Flores returned to the Game Room, but then,
after telling Rojas he felt "something was not right," he left the Game Room to check
on his living quarters, a small travel-trailer located adjacent to the Game Room. 

 When Flores reached the trailer he encountered appellant and his co-defendants. Flores yelled at them to go away. Appellant shot Flores three times and
then ran from the trailer.

 Mims and his fiancé, who had decided to return to the Game Room to retrieve
an item they had left behind, heard the gunshots and saw two African-American
males running from the Game Room's parking lot. Mims saw one of the men fire his
gun towards the Game Room. 

 Flores struggled back to the Game Room, collapsed, and was later pronounced
dead at the hospital from three gunshot wounds. Sergeant Cravens was dispatched
to respond to the 911 call for the shooting. On his way to the Game Room, he drove
by a gold Pontiac Grand Am occupied by three African-American men. He did not
stop the car because the dispatch had reported that the suspects had been seen fleeing
"on foot." 

 Police officers were not able to apprehend any suspects, nor could they find
forensic evidence such as bullets, shell casings, or fingerprints at the scene. The only
forensic evidence was a trail of blood on the sidewalk between the trailer and the
Game Room. Doctor Pustilnik, who performed the autopsy on Flores, found $1200
cash on Flores, and bullet wounds that were .7 to .8 millimeters in diameter. He noted
this diameter excludes many calibers, but not a gun with a .357 caliber.

 After the shooting, appellant told several people that he shot a Hispanic male
at the Game Room with a .357 revolver. He discussed the incident with Johnson, the
owner of the Grand Am, when he returned the car to her. He also talked to Jasmine
Collins, Durkelyn Haynes, and Jason Wright, all friends of his.

 The day after the shooting, appellant was arrested with Jason Wright in a
separate incident. Police approached appellant and Wright in their car after they were
alerted to a public disturbance related to gang activity. Officer Ostermeyer
discovered the car was stolen, searched inside, and found a .357 Smith and Wesson
revolver under the front passenger seat where appellant was sitting. The revolver had
two remaining rounds in it. DNA swabs from the revolver matched the DNA profile
of appellant. Appellant was arrested for unauthorized use of a vehicle and for 
unlawfully carrying a weapon. 

 While appellant was in jail, police received a Crime Stoppers tip that appellant
had been involved in the shooting the night before. Police interviewed appellant,
who initially denied any knowledge of the incident. Approximately 15 minutes later,
appellant decided that he wanted to "tell [his] story." In a videotaped statement,
appellant admitted that he and his co-defendants conspired to rob the Game Room
and admitted he was at the front door of the Game Room with his co-defendant
Mason. He further admitted that after being denied entry to the Game Room, he and
his co-defendants proceeded to the adjacent travel-trailer where at least one co-defendant peered through the windows of the trailer. Appellant stated that his co-defendant, Robinson, intended to enter the trailer because he believed the Game
Room's money would be stored there. Appellant admitted to running into Flores, but
denied shooting him, stating instead that his co-defendant Robinson shot Flores as
they ran away from the trailer. Appellant also stated that at the time Flores was shot,
appellant was on seven to eight "planks," a street name for Xanax. 

 At trial, the State presented testimony of Game Room employees and
customers, appellant's friends who discussed the incident with appellant, and officers
who investigated the crime. Appellant did not testify and did not call any witnesses
to testify. The jury charge allowed the jury to find appellant guilty as a principal
actor or under the law of parties as a party to a conspiracy to commit a felony. The
jury found appellant guilty of murder under a general verdict that did not specify
under which theory he was convicted. Sufficiency of Evidence for Murder

 Appellant challenges the legal and factual sufficiency of the evidence that
establishes his guilt.

 A. Law Pertaining to Legal Sufficiency

 In a legal sufficiency review, we consider the entire trial record to determine
whether, viewing the evidence in the light most favorable to the verdict, a rational
jury could have found the accused guilty of all essential elements of the offense
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct.
2781, 2788-89 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005). The jurors are the exclusive judges of the facts, the credibility of the
witnesses, and the weight to give their testimony. Margraves v. State, 34 S.W.3d
912, 919 (Tex. Crim. App. 2000). A jury is entitled to accept one version of the facts
and reject another, or reject any part of a witness's testimony. Id. In conducting our
review of the legal sufficiency of the evidence, we do not reevaluate the weight and
credibility of the evidence, but ensure only that the jury reached a rational decision. 
Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). In reviewing the
evidence, circumstantial evidence is as probative as direct evidence in establishing
the guilt of an actor, and circumstantial evidence alone can be sufficient to establish
guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). On appeal, the
same standard of review is used for both circumstantial and direct evidence cases. 
Id. 

 B. Law Pertaining to Factual Sufficiency

 In a factual sufficiency review, we view all of the evidence in a neutral light. 
Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will set the verdict
aside only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and preponderance of
the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 

 Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 In reviewing the factual sufficiency of the evidence, appellate courts should
afford almost complete deference to a jury's decision when that decision is based
upon an evaluation of credibility. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim.
App. 2008). The jury is in the best position to judge the credibility of a witness
because it is present to hear the testimony, as opposed to an appellate court who relies
on the cold record. Id. The jury may choose to believe some testimony and
disbelieve other testimony. Id. at 707.

 C. Elements of Murder

 Under Texas Penal Code section 19.02(b)(1), a person commits murder if he
intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann.
§ 19.02(b)(1). A person acts intentionally with respect to a result of his conduct when
it is his conscious objective or desire to cause the result. Id.§ 6.03(a) (Vernon 2003). 
A person acts knowingly with respect to a result of his conduct when he is aware that
his conduct is reasonably certain to cause the result. Id. § 6.03(b) (Vernon 2003).

 D. Sufficiency of Evidence Analysis

 Appellant contends in two issues that the evidence is legally and factually
insufficient to support the jury's finding of guilt for murder. Specifically, appellant
asserts the evidence is legally and factually insufficient to show that (1) he was
criminally responsible for the death of Flores, either individually or as a member of
a conspiracy; and (2) he had the necessary mental state to commit murder.

 Appellant asserts the evidence fails to show he shot Flores because there was
no physical evidence that linked appellant to the crime, in that there was no
fingerprint evidence, DNA evidence, bullets, or shell casings that could forensically
link appellant's weapon to the scene of the crime. Appellant contends the fact that
he possessed a gun similar in caliber to the gun used to kill Flores is insufficient
evidence. Appellant notes that there were no eyewitnesses. Appellant asserts that the
facts that he borrowed a car that was seen near the scene of the crime and that he
confessed to his friends, are insufficient to show he was the shooter.

 Appellant inaccurately notes that no physical evidence connected him to the
offense. The day after the shooting, appellant was found with a .357 revolver, a gun
with a caliber that matched the diameter of Flores' bullet wounds. DNA swabs from
the revolver matched appellant's DNA profile. Additionally, prior to being
apprehended, appellant described to his friend how he shot Flores with a .357
revolver. Therefore, although there were no fingerprints, bullets, or shell casings
linking him to the shooting, some physical evidence connected appellant to the
shooting because Flores' wounds were consistent to the firearm linked to appellant.

 Appellant accurately notes that no eyewitnesses saw the shooting. However,
several witnesses testified about statements by appellant that connect him to the
shooting. Johnson, the owner of the Grand Am, had a conversation with appellant
shortly after the shooting in which appellant stated "I shot him. I shot him. He's dead.
He's dead." 

 Jasmine Collins, who was with appellant the day after the shooting, testified
that appellant stated, "Everything went wrong. [I] [d]idn't know if the man died or
not." Collins' video statement was admitted into evidence. In the video, Collins
stated appellant said, "I shot the man; it went wrong; he fell." 

 Durkelyn Haynes also met with appellant the night of the robbery for several
hours. Appellant repeatedly said he had "messed up." Appellant later clarified,
telling Haynes, "Man, I messed up. He [was] fixing to get me, but I got him before
he got me." When Haynes asked who appellant was talking about, appellant replied
"he got" a "Mexican." Appellant explained the shooting occurred at the Game Room.
When asked how many times he shot Flores, appellant said, "Pow," and then, "I
walked up to him and let one go again." 

 Wright, the person arrested with appellant, made a written statement that was
admitted into evidence. In his statement, Wright stated appellant explained "about
how him and one of his friends went to the [G]ame [R]oom and was going to rob it. 
He said that somebody come outside and was fixin [sic] to shoot his friend but before
the dude got to shoot his friend, [appellant] had shot him." During this same
conversation, appellant "raised his shirt up and showed me he had a gun in his
waistband. That gun looked like a .357 revolver and it was black with a big wood
handle." Appellant further stated that Flores "had a gun himself" and before "that
guy" could shoot, appellant shot him. 

 Appellant asserts that we should dismiss his statements to his friends because
they were only "boastful" statements that "may have been fabricated to impress his
friends." Appellant relies on King v. State, 189 S.W.3d 347, 360 (Tex. App.--Fort
Worth 2006, no pet.), for the assertion that boastful statements are hearsay and should
not be admitted into evidence. When conducting a sufficiency review, however, we
consider all the evidence admitted at trial, whether properly or improperly admitted.
Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). We also note,
appellant did not object to the admission of the evidence at trial, and, therefore, the
evidence was properly before the jury.

 Appellant's statements to the police and his friends consistently refer to his
plan to rob the Game Room and his participation in the crime. Although in his
videotaped statement to the police appellant claimed one of the co-defendants was the
shooter, we must defer to the jury's determination whether to believe his statements
to his friends or the police based on its assessment of the credibility of the witnesses.

See Lancon, 253 S.W.3d at 705; Margraves, 34 S.W.3d at 919; Daniels v. State, 600
S.W.2d 813 (Tex. Crim. App. 1980) (holding circumstantial evidence legally and
factually sufficient where witnesses testified seeing Daniels with murder weapon,
Daniels admitted to witnesses to killing victim, and police found murder weapon
under Daniels' car seat).

 Appellant appears to assert that the evidence was insufficient to show he was
ever at the Game Room because Rojas, the woman at the Game Room's door who
denied appellant entrance, could not identify appellant in a photo line-up. Appellant,
however, admitted in his statement to the police to conspiring to rob the Game Room
with Robinson. He admitted that he went to the Game Room with both Robinson and
Mason with the intent to rob the Game Room and that it was he at the door seeking
entrance to the Game Room. 

 Appellant told his friends that he shot twice, and on the second shot he "walked
up to [Flores] and let one go again." This is evidence that appellant intentionally or
knowingly caused the death of Flores. See Lancon, 253 S.W.3d at 705-06;
Margraves, 34 S.W.3d at 919.

 Viewing the evidence in a light favorable to the jury's verdict, the logical force
of the total combined evidence shows that a jury could reasonably find beyond a
reasonable doubt that appellant intentionally or knowingly caused the death of Flores
by shooting Flores with a firearm. See Vodochodsky, 158 S.W.3d at 509. We,
therefore, hold the evidence is legally sufficient to prove appellant's guilt for murder
as the principal actor.

 Giving due deference to the jury's weighing of the evidence, we conclude that
a neutral examination of the evidence shows it is not so weak that the jury's finding
appellant guilty of murder is clearly wrong or manifestly unjust, and that the
determination of guilt is not against the great weight and preponderance of the
evidence. See Johnson, 23 S.W.3d at 11. We hold the evidence is factually sufficient
to prove appellant's guilt for murder as the principal actor. Having reviewed the
record, we also hold the evidence is legally and factually sufficient to prove
appellant's guilt under the law of parties. See Tex. Penal Code Ann. § 7.02 (Vernon
2003); Gravis v. State, 982 S.W.2d 933, 938 (Tex. App.--Austin 1998, pet. ref'd).

 We overrule appellant's first and second issues.

Conclusion

 We affirm the judgment of the trial court.




 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).